**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
Case No. 8:20-cv-2184-MSS-SPF

**MELANIE MOORE**

     Plaintiff,

v.

**POOCHES OF LARGO, INC.**
**d/b/a PETLAND &**
**LUIS MARQUEZ,**

     Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE THE COMPLAINT AS A SHAM, SHOTGUN PLEADING

Pursuant to Rule 8, Rule 12(b)(6) and Local Rule 3.01, Defendants Pooches of Largo, Inc. & Luis Marquez hereby file their consolidated motion to dismiss and/or motion to strike the Complaint as a sham and shotgun pleading.

### *Introduction*

This alleged dispute arises from the Plaintiff's short, three-week employment stint with Pooches of Largo, Inc. as a kennel technician. Apparently, the Plaintiff believed she was being hired for a full-time position salaried at $35,000.  After three weeks of employment and two paychecks, she stopped working when she discovered that she

was actually a part-time employee at $8.45 an hour.  Putting aside the incredible nature of the misunderstanding, and assuming, *arguendo*, she was correct, Ms. Moore was accidentally shorted approximately $1,441.53 for those three weeks.  *See* D.E. 1-1, p. 19_.  And, as Ms. Moore herself acknowledges because she attached settlement communications as an exhibit to her Complaint, the Defendants offered her $1,500.00.  *See* D.E. 1-1, p. 40.  Ms. Moore, through counsel, declined.

Ms. Moore retained attorney Richard Cellar who proceeded to make a demand for $70,000.00, while simultaneously advising Ms. Moore that her claim was worth no more than a few thousand dollars.  *See* D.E. 1-1, p. 36.  How do we know this?  Because Ms. Moore filed 112 pages of exhibits, including otherwise privileged and confidential communications, in an effort to support her count for tortious interference.  Ms. Moore claims that her former attorney, Richard Cellar, either conspired with the Defendant to harm her, and/or the Defendant tortiously interfered with her attorney-client relationship with Mr. Cellar. Mr. Cellar terminated his relationship with Ms. Moore – and now Ms. Moore blames the Defendant of being the unlawful cause of the end of that attorney-client relationship *and* her

inability to find a new attorney. She also claims Mr. Cellar's committed malpractice, *see* D.E. 1, ¶¶ 61, 208, 234, without naming him as a defendant.

Each count, as pled, is painfully and obviously frivolous both legally and factually. For example, Mr. Cellar emailed Ms. Moore to tell her the statute of limitations to file is August 31, 2020. *See* D.E. 1-1, p. 34. Ms. Moore filed on September 16, 2020. She is seeking compensation under the FLSA and Florida common law, including compensation for her schooling (tuition and books) and her ongoing mental health treatment. See D.E. 1, ¶¶ 250-267.

### *The Complaint is an Improper Shotgun Pleading*

The Complaint is 85 pages. It has 11 counts, except there are two Count IIs and two Count Vs, so there are really 13 counts. There's 112 pages of exhibits, including settlement communications, attorney-client privileged information, and random pages from the internet that relate to Ms. Moore's scandalous and false claim that Petland is running a puppy mill.[1]

---

[1] Calling a pet store a "puppy mill" is highly pejorative. And more to the point, the Defendants have been statewide leaders in calling for stricter regulations concerning the sale of dogs to avoid and prevent the danger of puppy mills. Ms. Moore is barking up the wrong tree.

In July 2019, After Ms. Moore defamed Defendant Pooches on Facebook, Pooches commenced a defamation action against her in Miami-Dade Circuit Court. Although she emailed to confirm she knew about the lawsuit, she was never served because, according to her, she is homeless. The defamation action was dismissed without prejudice for lack of service and failure to prosecute. That lawsuit, and emails and documents relating to that dismissed lawsuit, is attached to the Complaint here even though it has no bearing on this lawsuit.

Each count adopts and incorporates all prior allegations, including the allegations of all prior counts. Each count incudes conclusory allegations of wrongdoing without any attachment to an actual cause of action. Each count *appears* to be pled against *both* Defendants, but all counts only refer to the "Defendant" in the singular without identifying which Defendant(s) is the subject(s) of the count. Nowhere does the Complaint explain why Defendant Marqeuz – who is not alleged to have ever met or communicated with Ms. Moore in any way – is personally named as a defendant. If Ms. Moore has specific claims against Defendant Luis Marquez personally, then she needs to say so clearly and sufficiently.

Shotgun pleadings are subject to dismissal for violating Rule 8:

Shotgun pleadings violate Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), by "fail[ing] to one degree or another ... to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (defining the four types of shotgun pleadings). Courts in the Eleventh Circuit have little tolerance for shotgun pleadings. *See generally Davis v. Coca-Cola Bottling Co. Consol.* , 516 F.3d 955, 979–80 & n.54 (11th Cir. 2008) (collecting numerous cases), *abrogated on other grounds by Bell Atl. Corp. v. Twombly* , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). They waste scarce judicial resources, "inexorably broaden[ ] the scope of discovery," "wreak havoc on appellate court dockets," and "undermine[ ] the public's respect for the courts." *Id.* at 981–83 (detailing the "unacceptable consequences of shotgun pleading").

A district court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits," which includes the ability to dismiss a complaint on shotgun pleading grounds. *Weiland* , 792 F.3d at 1320. In the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to sua sponte allow a litigant one chance to remedy such deficiencies. *See, e.g.* , *Wagner v. First Horizon Pharm. Corp.* , 464 F.3d 1273, 1280 (11th Cir. 2006) ; *Byrne v. Nezhat* , 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.* , 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008) ; *Magluta v. Samples* , 256 F.3d 1282, 1284–85 (11th Cir. 2001) (per curiam). In these cases, even if the parties do not request it, the district court "should strike the complaint and instruct counsel to replead the case—if counsel could in good faith make the

representations required by Fed. R. Civ. P. 11(b)." *Byrne*, 261 F.3d at 1133 n.113 (alterations adopted) (quoting *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ). This initial repleading order comes with an implicit "notion that if the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions." *Id.* at 1133.

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018).

Shotgun pleadings include complaints that: (1) contain multiple counts where each count adopts the allegations of all preceding counts; (2) do not re-allege all the proceeding counts but are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) do not separate each cause of action or claim for relief into separate counts; or (4) in a multi-defendant action, contain counts that present a claim for relief without specifying which defendants the claim is brought against. *See Weiland*, 792 F.3d at 1321-23 (citing different types of shotgun pleadings).

Whatever leniency Ms. Moore is entitled to as a *pro se* litigant, *Haines v. Kerner*, 404 U.S. 519 (1972), her 200-page pleading is still

improper and unfair to the Court and the Defendants because "the *pro se* litigant must still meet minimal pleading standards." *Olsen v. Lane*, 832 F. Supp. 1525, 1527 (M.D. Fla. 1993); *see also Albra v. Advan*, 490 F.3d 826, 829 (11th Cir. 2007) ("And although [courts] are to give liberal construction to the pleadings of pro se litigants, [courts] nevertheless have required them to conform to procedural rules."); *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."). Nor does *pro se* leniency allow a court "to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014). "While a pro se litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile." *Cornelius v. Bank of Am., N.A.*, 585 F. App'x 996, 1000 (11th Cir. 2014)

Finally, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Jacob v. Mentor Worldwide, LLC*,

389 F. Supp. 3d 1024, 1027 (M.D. Fla. 2019) (Scriven, J., granting dismissal). Not a single one of the counts is plausible – Ms. Moore is asking this Court to award her compensation for back pay, front pay, tuition, school books, the loss of her attorney, mental heath treatment, the loss of a storage shed and its contents, eviction, etc., all premised upon what is at most her own mistake about what her rate of pay would be during her three-weeks of employment.

### *Each Count Fails*

<u>Count I – FLSA Retaliation</u>

Count I alleges that the Plaintiff was retaliated against in violation of the FLSA. But the Complaint doesn't specify which Defendant is the subject of the claim – paragraph 133 alleges the Plaintiff was "employed for the Defendant" at "his" Largo store. This allegation, using the word "his," suggests the count is pled against Defendant Marquez – but there is no allegation that Defendant Marquez knew about the alleged wage complaint or that he took any action, personally, against the Plaintiff. Other allegations in Count I appear to be directed at the corporate Defendant. But Count I is so vague that it is impossible for the Defendants to defend against. This error permeates the Complaint.

Count I also fails to state a cause of action for FLSA retaliation. "The FLSA protects persons against retaliation for asserting their rights under the statute. A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: (1) she engaged in activity protected under [the] act…" *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). Ms. Moore correctly alleges she was paid $8.45 per hour for 24 hours. D.E. 1, ¶ 22; D.E. 1-1, p. 10. She was paid above minimum wage (which was $8.25 per hour in 2018) and did not work in excess of 40 hours per week in any given week. She attached her accurate paystubs to the Complaint. D.E. 1-1, pp. 24-25.

The entire "complaint" about a wage discrepancy is found at D.E. 1-1, pp. 11-14. There is no additional communication between the parties about the issue, and thus any discovery would be unproductive. It is a text message exchange between Ms. Moore and a Pooches administrator, Allison. Ms. Moore complains to Allison that she was paid $8.45 an hour when she was supposed to be paid $35,000 annually based upon an advertisement she saw. She then accuses Petland of "bait and switch" and of being "a total scam." Allison responds by suggesting Ms. Moore call the corporate office to

figure out the discrepancy. Ms. Moore responds instead that she will get an attorney. Ms. Moore is then terminated.

Ms. Moore, at best, alleges an internal complaint about a discrepancy between the rate of pay she was expecting and the rate of pay she received. This *may* constitute a breach of contract, or it *may* even constitute fraud (all of which is strongly denied by the Defendants) – but it does not constitute a complaint that her rights under the FLSA were violated. The anti-retaliation provision of the Act covers an "employee [who] has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). She did not complain to the company that she was denied minimum wage or overtime, and thus as a matter of law she did not engage in protected activity. The mere fact that she disputed her otherwise lawful rate of pay is interesting but irrelevant to the Act.

### Count II – Retaliation Pursuant to Fla. Stat., § 448.102

Count II is an attempt to use Florida's Whistleblower Act to create a minimum wage claim where there is none. She clams she

"engaged in a statutorily protected activity when she objected to Defendant's failure to pay her at the corresponding wage in breach of the employment contract." D.E. 1, ¶ 140. Putting aside the absence of an employment contract, Ms. Moore alleges that when she put the Defendant on notice of a potential breach of contract, she was engaging in statutorily protected activity. Ms. Moore is wrong.

"Pursuant to the statute [§ 448.101-202], the activity complained of must be in violation of a 'law, rule, or regulation,' which is defined as 'any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local **statute or ordinance** applicable to the employer and pertaining to the business.'" *Pinder v. Bahamasair Holdings Ltd., Inc.*, 661 F. Supp. 2d 1348, 1353 (S.D. Fla. 2009) (emphasis added). "The last phrase of the definition indicates that the conduct complained of must be in violation of a law, rule or regulation that is somehow more specifically applicable to the business, as opposed to the public at large." *Id.*

Ms. Moore alleges "she complained about the wage discrepancy." ¶ 142. Complaining about a discrepancy between a job advertisement and a paystub is not protected activity under Florida's Whistleblower Act.

## Second Count II – Breach of Contract

Ms. Moore's Complaint has two Count IIs.  For simplicity, the Defendants refer to this second Count II as the Second Count II.  Ms. Moore alleges that Petland's unauthenticated job posting on Indeed.com constitutes an "offer" to contract and that becoming employed constitutes an "acceptance."  *See* D.E. 1-1, p. 2-3.  In Florida, "the duty of construing a contract is that of the court and not the jury."  *Russell v. Handshoe*, 176 So. 2d 909, 912 (Fla. 1st DCA 1965).  Employment is presumed at-will, absent a contract specifically stating otherwise.  *Id.* at 713.

In theory, Ms. Moore could claim – pursuant only to Florida common law – unpaid wages for the three weeks she worked.  *I.e.,* the difference between the rate of pay she thought was agreed upon and the rate of pay she was actually paid.  This would be a $1,400 small claims action, but Ms. Moore would still have to allege and prove that she and her employer agreed on her rate of pay.  Claiming she saw a job posting suggesting the rate of pay was $35,000 annually is not an agreed upon rate of pay.

Further complicating the breach of contract count is her desired remedy. Ms. Moore is improperly seeking consequential and punitive damages for the alleged breach of contract:

> 156. Defendant made the contract in bad faith and did, in fact, subject Plaintiff to undue harm. Defendant caused Plaintiff economic harm, psychological harm, physical harm, and property loss. But for the breach, Plaintiff would have had the wages she earned with which to pay her housing expenses. But for the breach, Plaintiff would not have had to put her belongings into a storage unit when she could not pay her housing costs. But for the breach, Plaintiff would not have subsequently lost everything she owned when she fell two months behind in storage rent. Moreover, Plaintiff would not have been forced to occupy a residence without authorization because she did not have her wages with which to pay her housing costs. But for the breach, Plaintiff would not have been subjected to the embarrassment and humiliation of being removed from her residence of several years when the police served an unlawful detainer just three weeks after unlawful termination and forcing her into homelessness. Furthermore, the unlawful detainer is part of Plaintiff's permanent record and caused damage to Plaintiff's personal reputation. The unlawful detainer on her record will also cause Plaintiff difficulty when attempting to obtain a residence.

*See* D.E. 1, ¶ 156.

"A plaintiff is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 954 (Fla. 3d DCA 2017). Ms. Moore's only measure of

damages, assuming she has a valid cause of action for breach of contract, is the difference between the amount the Defendants were contractually obligated to pay and the amount it actually paid. The difference is $1,441.53, and no more.

### Count III – Minimum Wage Violation under the FLSA

Ms. Moore's minimum wage claim fails as a matter of law because she admits she was paid $8.45 per hour for all hours worked. (At the time, minimum wage in Florida was $8.25 per hour). In paragraph 161 of the Complaint, Ms. Moore alleges she was paid a total of $184 working 85 hours over a three-week period. But she filed her two paystubs as attachments, *see* D.E. 1-1, pp. 24-25, both of which of part of the pleading for all purposes. *See* Fed. R. Civ. P. 10(c); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

Ms. Moore's first paystub, D.E. 1-1, p. 24, covers her first week of employment. She worked 24.27 hours at $8.45 per hour. Her net pay was $205.08.[2] (She claims she was only paid $184 for all three weeks, which *appears* to be a reference to the $183.12 net she

---

[2]    This is the live check she received on August 31, 2018, the same day she was terminated. *See* D.E. 1, ¶ 165.

received *after* taxes on the first of her two paystubs). The second paystub, D.E. 1-1, p. 25, covers her second and third (and final) weeks. She was paid for 44.07 hours (over two weeks, not a single week) at $8.45 per hour.[3]

Her paystubs are correct and are dispositive. "Where there is conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Friedman v. Market Street Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008).

Second, Ms. Moore's lawsuit was filed late. Her last day of employment was August 31, 2018, *see* D.E. 1, ¶ 165, making August 31, 2020 the end of the presumptive two-year statute of limitations under the FLSA. Ms. Moore's former attorney, Richard Cellar, specifically advised her of this deadline via email. *See* D.E. 1-1, p. 133, 161, 163. She nevertheless sued on September 16, 2020, 16 days too late.

Nor does Ms. Moore allege any plausible willful violation of the FLSA. "A willful violation may be found when the employer disregarded the very possibility that it was violating the statute."

---

[3] This was paid via direct deposit on September 14, 2018. *See* D.E. 1-1, p. 25.

*Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1323 (11th Cir. 2007). "The three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA; rather, it may apply when it simply disregarded the possibility that it might be violating the FLSA." *Id.* "If an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful and the two-year statute of limitations should be applied." *Id.* Ms. Moore was paid in excess of the minimum wage in 2018 and she never worked close to (much less above) 40 hours per week in any given workweek. There is no possibility of a viable FLSA claim. Accordingly, there can be no possibility of a "willful" violation of the Act when there is no violation of the Act. Ms. Moore has pled nothing that would entitle her to take advantage of any extended, three-year statute of limitation.

<u>Count IV – Wage Theft Pursuant to the Pinellas County Code</u>

Ms. Moore's claim under the Pinellas County Code fails because there is no private cause of action authorizing her to file a lawsuit and because she failed to comply with the procedural prerequisites. First, the County Code expressly disallows simultaneous claims under both the County Code and federal or state law. *See* Section

70-308(f)(1)(a). "If during the pendency of a wage theft violation employee but prior to the issuance of a final order by a special magistrate, an employee brings a private action in their own right, whether under state law, federal law, or both, in any state or federal court to seek unpaid wages based upon the same facts and allegations as the employee's complaint to the county, or affirmatively or by consent participates in any such litigation, that employee's complaint of wage theft shall be deemed withdrawn with respect to any employer named as a defendant in such court action." *Id.* Even if Ms. Moore complied with the Code, her claim would automatically be deemed "withdrawn" because she filed an identical claim under the FLSA and state law arising from the same alleged unpaid wages.

Second, wage theft claims filed under the Pinellas Code have to be filed with the county within one year. *Id.* at § 70-307(a)(3). Ms. Moore does not allege she filed with the county, timely or otherwise. The face of the Complaint demonstrates that any local county code claim is time-barred.

## Count V – Fraudulent Misrepresentation Count I

Count V (one of two fraudulent misrepresentation claims) alleges that the Defendant's job advertisement was fraudulent. Ms.

Moore claims that the job position and rate of pay was not just incorrect, but was fraudulent. Presumably Ms. Moore is suggesting that she was fraudulently induced into contracting with Petland, but she is not expressly saying so. Fraud is not actionable when the parties are in privity unless there is an "independent act" from the act that breached the contract. *See Tiara Condo. Ass'n, Inc. v. Marsh*, 110 So. 3d 399, 402 (Fla. 2013). The crux of the fraud claim, at least as far as can be discerned, is that the Defendant underpaid the Plaintiff in violation of a contractual agreement. This is a breach of contract claim, not an independent fraud claim.

<u>Count V – Fraudulent Misrepresentation Count II</u>

The second fraudulent misrepresentation claim asserts that the Defendant's website (www.PetlandFlorida.com) "contains representations made to induce the public into conducting business with Petland stores." D.E. 1, ¶ 183. A former employee has no standing to assert a claim for fraud on the employer's consumers. "To demonstrate Article III standing, a plaintiff must allege that (1) he has suffered an actual or threatened injury, (2) the injury is fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable ruling." *Phoenix v.*

*McDonald's*, 489 F.3d 1156, 1161 (11th Cir. 2007). A false statement to potential consumers is not a false statement to an employee.

<u>Count VI – Promissory Fraud</u>

There is no discrete tort in Florida known as "promissory fraud." Count VI is frivolous for the same reasons as the other fraud counts.

<u>Count VII – Tortious Interference with a Contract</u>

The tortious interference count is just sad. Ms. Moore alleges that her attorney-client relationship with her attorney, Richard Cellar, was tortiously interfered with by the Defendants because the Defendants somehow refused to settle or negotiate with her. She claims that Richard Cellar "was compensated in some other way." *See* D.E. 1, ¶ 205. The not very subtle but entirely false insinuation is that her attorney Richard Cellar was bribed by the Defendants to drop her as a client. Ms. Moore filed her emails with attorney Richard Cellar. He dropped her as a client because he didn't believe she had much of a case. *See* D.E. 1-1, pp. 34 & 35. The Defendants simply weren't going to respond to Ms. Moore or Richard Cellar's baseless claims or the unbelievable demand for $70,000.

If Ms. Moore has a problem with Mr. Cellar, she is free to take it up with him.

## Count VIII – Abuse of Process

It is a matter of public record that the Defendant (Pooches of Largo) filed a defamation complaint against Ms. Moore in Miami-Dade Circuit Court. The crux of the complaint is that Ms. Moore took to Facebook to defame Petland and this particular Petland store – she accused the company of running a puppy-mill (which is a four-letter word in the pet industry) and posted horrible pictures that weren't taken at the company's store. Her defamation campaign was undertaken after Ms. Moore was dropped as a client by Mr. Cellar. The defamation lawsuit was never served because Ms. Moore was homeless. The process server never found her. The case was recently dismissed without prejudice for failure to prosecute. (Ms. Moore attached the first two pages of that complaint as D.E 1-1, pp. 47-48.).

Ms. Moore alleges – rather vaguely – that the defamation lawsuit was an abuse of process. But "the mere filing of a complaint and having process served is not enough to show abuse of process." *S & I Investments v. Payless Flea Market, Inc.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010). "The plaintiff must prove improper use of process *after* it issues." *Id.* (emphasis added). As a matter of law, filing a lawsuit can never be an abuse of process.

## Count IX – Defamation Per Se

Ms. Moore complains that the lawsuit filed against her in Miami-Dade Circuit Court was defamatory. The Miami-Dade lawsuit occurred, rather obviously, during a judicial proceeding, and is thus entitled to absolute immunity. *See Levin, Middlebrooks v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). There is no allegation of defamation outside the context of a judicial proceeding.

## Count X – Civil Conspiracy (42 U.S.C. § 1985)

Ms. Moore alleges upon information and belief that the Defendants "formed an unlawful agreement with Attorney Cellar to deprive Plaintiff of access to the courts." D.E. 1, ¶ 233. As indicated in her own emails, Mr. Cellar wisely dropped Ms. Moore as a client because he didn't see much of a case. D.E. 1-1, pp. 34 & 35. The crux of this count is that her former attorney was terrible. If Ms. Moore has a problem with Mr. Cellar, she is free to take it up with him. She is suing the Defendant for having the audacity of defending itself from a frivolous lawsuit – this she cannot do.

To the extent she believes she has been denied access to the courts, she may want to consider that she is making this allegation in a complaint filed in federal district court. You can't go to court on

a claim and then assert that you can't go to court to make the very claim you made in the complaint.

<u>Count VI – Intentional Infliction of Emotional Distress</u>

Ms. Moore complains of "extreme and outrageous conduct" but never identifies the extreme and outrageous conduct. What did the Defendants do that is so outrageous?

"A claim of intentional infliction of emotional distress under Florida law requires a plaintiff to prove: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior and he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, it went beyond all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Malverty v. Equifax Info. Servs.*, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (granting motion to dismiss). "In evaluating whether conduct is outrageous, "the subjective response of the person who is the target of the actor's conduct does not control ... Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized community." *Id.*

"Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." *Id.* Nothing Ms. Moore alleges comes close to objectively stating a cause of action for intentional infliction of emotional distress.

Prayer for Relief

Ms. Moore's five-page prayer for relief seeks damages that includes tuition reimbursement, self-storage fees, loss of personal items, loss of her residence, loss of consortium and mental health counselling. Whatever obvious issues have occurred in Ms. Moore's life, they cannot be fixed in any way in this lawsuit.

***Conclusion***

For the reasons stated above, Defendants request that the Complaint be stricken in its entirety with prejudice. All discovery and other matters should be stayed pending resolution of the obvious pleading deficiencies.

/s/ Matthew Sarelson
Matthew Seth Sarelson, Esq.
**MATTHEW SETH SARELSON, P.A.**
Counsel for Defendants
2100 Ponce de Leon Blvd., Suite 1290
Miami, Florida 33134

305-773-1952
[msarelson@sarelson.com](mailto:msarelson@sarelson.com)
Florida Bar No. 888281