## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MELANIE MOORE,

      **Plaintiff,**

**v.**                                  **Case No: 8:20-cv-2184-T-35SPF**

**POOCHES OF LARGO, INC. and
LUIS MARQUEZ, Individually and as
owner of Pooches of Largo, Inc.,**

      **Defendants.**

_____

## ORDER

      **THIS CAUSE** comes before the Court for consideration of Defendants' Motion to Dismiss and/or Strike the Complaint as a Sham, Shotgun Pleading, (Dkt. 19), and Plaintiff's response in opposition thereto. (Dkt. 22) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS IN PART and DENIES IN PART** the Motion to Dismiss.

## I. BACKGROUND

      *Pro se* Plaintiff Melanie Moore initiated this action against her former employer Pooches of Largo, Inc. and its owner, Luis Marquez, alleging thirteen causes of action, including failure to pay minimum wages and retaliation in violation of the Fair Labor Standards Act ("FLSA"), retaliation in violation of the Florida Whistleblower Act, breach of contract, wage theft in violation of Pinellas County Code of Ordinances 70.306, two counts of fraudulent misrepresentation, promissory fraud, tortious

1

interference with contract, abuse of process, defamation per se, "civil conspiracy" in violation of 42 U.S.C. § 1985, and intentional infliction of emotional distress. (Dkt. 1) The relevant allegations in the Complaint are as follows.

On August 4, 2018, Plaintiff submitted her resume in response to an employment offer on the website indeed.com for a Certified Veterinary Technician position at Defendants' Largo Petland store. (Id. at ¶ 17) The offer stated that compensation for the position was an annual salary of $35,000. (Id.) Plaintiff interviewed and was hired for the position on August 12, 2018. (Id. at ¶ 19) She alleges that she was instructed to report for training at 7:00 am the following morning, so her first day of employment was August 13, 2018. (Id.) Plaintiff alleges that she worked full-time in accordance with her schedule for the next three weeks. (Id. at ¶ 21) She attaches copies of her written schedule for weeks two and three and states that she was not on a written schedule the first week. (Id. at ¶ 21; Dkt. 1-1 at 8, 9)

Plaintiff received her first and only paycheck on August 31, 2018. (Dkt. 1 at ¶ 22) Plaintiff alleges that this paycheck is all that she received for three weeks of work and that she was paid $184.[1] (Id.) Although Plaintiff acknowledges that the pay stub reflects that she was being paid $8.45 per hour for 24 hours of work, she alleges that her hours were "significantly understated." (Id.) She alleges that she worked a

---

[1] Based on the documents attached to Plaintiff's Complaint, her allegation that she was paid $184 appears to reflect the amount of income she received after tax withholdings. (Dkt. 1-1 at 24) On a motion to dismiss, the Court may consider documents attached to the Complaint or directly referred to in the Complaint as part of the pleadings. Solis–Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985). The Court considers the pre-tax amount of $205.08 reflected in the attachments to the Complaint in determining whether Plaintiff was paid minimum wages.

minimum of 85 hours over the course of her three weeks of employment based on her schedule. (Id.) She also claims that on several occasions she had to work later than her scheduled time, and she estimates that she worked a total of approximately 90 hours for Defendants. (Id.)

Immediately after receiving her first paycheck, Plaintiff text messaged her supervisor to notify her of a discrepancy of approximately $1,800 in her wages. (Id. at ¶¶ 23–24, Dkt. 1-1 at 11–14) Plaintiff told her supervisor that she was not being paid at the promised salary of $35,000 per year and that "[t]he pay rate" of $8.45 was incorrect. (Dkt. 1 at ¶¶ 23–24, Dkt. 1-1 at 11–14) Thirty-six minutes after she texted her supervisor about the issue with her wages, Plaintiff was advised by text message that her employment with Defendants was terminated, effective immediately. (Dkt. 1 at ¶ 24, Dkt. 1-1 at 11–14) Plaintiff alleges that she had been an excellent employee, with no documented disciplinary, attendance, or performance issues during her employment. (Dkt. 1 at ¶ 25)

On October 10, 2018, Plaintiff retained Attorney Richard Celler to assist her in recovering her wages and pursuing her claim for retaliatory discharge. (Id. at ¶ 26) Two months later, Attorney Celler sent a demand letter to Defendants, who responded that Plaintiff was not a veterinary technician as she believed, but instead was employed as a part-time kennel technician with a corresponding wage of $8.45 per hour. (Id. at ¶ 28) Plaintiff contends that Defendants attached to their response a job listing for a kennel technician position that was allegedly created three months after her termination. (Id. at ¶ 29)

3

Defendants' response to the demand letter also included a copy of the Earnings Statement for the check Plaintiff received on August 31, 2018, reflecting $205.08 (before applicable tax withholding) of earned wages for 24.27 hours of work, and an Earnings Statement reflecting $372.39 (before applicable tax withholding) of earned wages for 44.07 hours of work, with a net pay of $320.89 allegedly deposited directly into Plaintiff's bank account ending in 4752 on September 14, 2018. (Id. at ¶ 38; Dkt. 1-1 at 24–25) Plaintiff alleges that she no longer has that bank account and has no knowledge of any such direct deposit made to her account by Defendants. (Dkt. 1 at ¶ 38) The second Earnings Statement also indicates that it was for the pay period of 8/31/18 – 9/13/18; however, Plaintiff alleges that she was terminated on August 31, 2018 and would not have earned wages during that time. (Id.) Based on these discrepancies and the fact that she never received the money, Plaintiff alleges that the second Earnings Statement is not authentic. (Id.) Plaintiff further claims that, even assuming this direct deposit was in fact made to her account, it shows she was not paid minimum wages for the total hours she claims she worked. (Id. at ¶ 39) Plaintiff also alleges that Defendants failed to maintain accurate employment records and that their assertion of her dates of employment are incorrect. (Id. at ¶ 40) Plaintiff asserts that Defendants' conduct was willful. (Id.)

When pre-suit negotiations stalled, Attorney Celler terminated his representation of Plaintiff, prompting her to file the instant action *pro se*. (Id. at ¶ 54) Plaintiff claims that Attorney Celler conspired with Defendants to violate her rights to access the court and that Defendants tortiously interfered with her relationship with

4

Attorney Celler. (<u>Id.</u> at ¶¶ 45–62, 81) Plaintiff also claims that Defendants initiated a defamation lawsuit against her for the purpose of harassing her and deterring her from pursuing her FLSA claims. (<u>Id.</u> at ¶¶ 67–79) Defendants have moved to dismiss the action in its entirety, asserting that each count in Plaintiff's Complaint fails to state a claim for relief and that the Complaint is an impermissible shotgun pleading. (Dkt. 19)

## II.   LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. <u>Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.</u>, 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1968-69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." <u>Berry v. Budget Rent A Car Sys., Inc.</u>, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting <u>Twombly,</u> 127 S. Ct. at 1964-65). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. <u>Quality Foods</u>, 711 F.2d at 994-95. However, the court should not assume that the plaintiff can prove facts that were not alleged. <u>Id.</u> Thus, dismissal is warranted if, assuming the truth of the factual

allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.   DISCUSSION

### A.   FLSA Retaliation and Minimum Wage Claims

Plaintiff brings claims for retaliation and failure to pay minimum wages pursuant to the FLSA. (Dkt. 1 at ¶¶ 132–38, 160–69) Defendants contend that Plaintiff's FLSA claims are barred by the FLSA's two-year statute of limitations, and Plaintiff has pled insufficient facts regarding the "willfulness" of Defendants' conduct to bring her claims within the FLSA's three-year limitation period. (Dkt. 19 at 14–16) A claim brought under the FLSA must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An FLSA violation is considered willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Reich v. Dep't of Conservation & Natural Res., 28 F.3d 1076, 1084 (11th Cir. 1994) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Dismissal on statute-of-limitations grounds is "appropriate *only* if it is apparent from the face of the complaint that the claim is time-barred and *only* if it appears beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute." Sec'y of Labor v. Labbe, 319 F. App'x 761, 764 (11th Cir. 2008) (quoting Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n. 13 (11th Cir.

2005), <u>overruled on other grounds by</u> <u>Merck & Co., Inc. v. Reynolds</u>, 559 U.S. 633 (2010)) (alteration in original).

If Defendants' actions on August 31, 2018 are found to be willful, Plaintiff's claims, brought on September 16, 2020 well within the three-year window, would not be time barred. Whether Defendants' alleged FLSA violations were willful is a factual question better left to determination on summary judgment or at trial. Therefore, Plaintiff's allegation that Defendants' conduct was willful is sufficient to withstand dismissal at the pleading stage, and it is premature to determine that the FLSA claims are time-barred. See Crossley v. Armstrong Homes, Inc., No. 5:14-CV-636-OC-30PRL, 2015 WL 2238347, at *5 (M.D. Fla. May 12, 2015) (allegations of "willful" conduct sufficient to withstand dismissal under the two-year statute of limitations at the pleading stage); Gonzalez v. TZ Ins. Solutions, LLC, No. 8:13–CV–2098–T–33EAJ, 2014 WL 103524, at *1 (M.D. Fla. Jan. 10, 2014) (same); Puleo v. SMG Prop. Mgmt., Inc., No. 6:08–cv–Orl–22DAB, 2008 WL 3889727, at *1 (M.D. Fla. Aug. 20, 2008) (same).

Plaintiff asserts a claim under the FLSA for failure to pay minimum wages, alleging that she was paid $205.08 before tax withholdings for 90 hours of labor. "To establish that an employer violated the minimum wage requirement in [the FLSA], the plaintiff must demonstrate that the wage she received for her work was below the statutory minimum" of $8.25 an hour. Montgomery v. 3300 Corp., No. 18-62683-CIV, 2019 WL 3890857, at *2 (S.D. Fla. June 28, 2019). Accepting her allegations as true, Plaintiff was paid below minimum wage at an hourly rate of approximately $2.28.

Alternatively, even if Defendants' suggestion of a second deposit to Plaintiff's account of $320.89 ($372.39 before tax withholdings) is accurate, which Plaintiff alleges it is not, she was still paid below minimum wage at approximately $6.42 per hour based on the hours she alleges she worked. As such, Plaintiff's FLSA minimum wage claim survives dismissal and Defendants' Motion to Dismiss is **DENIED** as to Count Three, Failure to Pay Minimum Wage in Violation of FLSA 29 U.S.C. § 206(a).

Plaintiff also brings a claim for FLSA retaliation based on Defendants' termination of her employment on the same day that she complained about her wages. (Dkt. 1 at ¶¶ 132–38) Defendants contend that this claim fails because Plaintiff's allegations do not support that she engaged in protected activity prior to her termination. (Dkt. 19 at 8–10) Plaintiff alleges that she engaged in a protected activity when she lodged a complaint about the discrepancy in her wages to her supervisor. (Dkt. 1 at ¶ 134) An employee engages in protected activity under the FLSA if she "file[s] any complaint or institute[s] or cause[s] to be instituted any proceeding **under or related to this chapter**, or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. § 215(a)(3) (emphasis added). The Eleventh Circuit has held that informal complaints concerning conduct which implicates the FLSA qualify as protected activity. See EEOC v. White & Son Enters., 881 F.2d 1006, 1011–12 (11th Cir. 1989) (finding that employees' informal complaints concerning unequal pay, which did not involve citation of the Equal Pay Act or the FLSA, constituted protected activity); see also Debrecht v. Osceola County, 243 F. Supp. 2d 1364, 1374 (M.D. Fla. 2003) (finding that employees' informal complaints to employer concerning unpaid

overtime constituted protected activity under the FLSA). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011).

While Plaintiff does allege that she complained about her wages to her supervisor, which conversation she attaches to her Complaint, the conversation cannot reasonably be understood to be an assertion of rights protected by the FLSA.[2] (Dkt. 1 at ¶¶ 23–24, Dkt. 1-1 at 11–14) Therein, Plaintiff advised her supervisor that her rate of pay was "not right," but clarified that the error is with the $8.45 per hour rate of pay, contending that it should have been higher based on the job listing advertised for the position. (Dkt. 1-1 at 11–14) Plaintiff asserted that she was hired for a salaried position at $35,000 per year, and stated in her message "[t]hey can't offer a job at one pay rate and then change the rate after someone has already put in the hours." (Id.)

Not every pay-related complaint constitutes an assertion of rights under the FLSA. Foy v. Pat Donalson Agency, 946 F. Supp. 2d 1250, 1275–76 (N.D. Ala. 2013) (finding that an employee's complaint about not getting paid promptly and regularly and her request that she be paid through payroll was not protected activity, where she did not specifically complain about conduct that would

---

[2] "Where there is conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." Friedman v. Market Street Mortg. Corp., 520 F.3d 1289, 1295 n.6 (11th Cir. 2008).

implicate the FLSA). Here, Plaintiff's complaint to her employer was premised on an alleged breach of contract, not an alleged FLSA violation. Specifically, Plaintiff complained that her employer promised her a higher rate of pay than what she received. She never mentioned that she believed her hours were understated or that her rate of pay was below minimum wage. Thus, the Court finds that Plaintiff fails to state a claim for retaliation under the FLSA and Count One for Unlawful Discharge/Retaliation in Violation of 29 U.S.C. § 215(a)(3) is due to be **DISMISSED**.

### B. Florida Whistleblower Act

Plaintiff's claim for retaliation under the Florida Whistleblower Act ("FWA") is likewise due to be dismissed. The FWA provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer **which is in violation of a law, rule, or regulation**."  Fla. Stat. § 448.102(3) (emphasis added). To establish a prima facie case under the FWA, a plaintiff must allege "(1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) the adverse action was causally linked to the protected activity." Graddy v. Wal-Mart Stores E., LP, 237 F. Supp. 3d 1223, 1226 (M.D. Fla. 2017). "Law, rule, or regulation" is defined by the FWA as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4). "The last phrase of the definition indicates that the conduct complained of must be in violation of a law, rule or regulation that is

somehow more specifically applicable to the business, as opposed to the public at large." Pinder v. Bahamasair Holdings Ltd., Inc., 661 F. Supp. 2d 1348, 1353 (S.D. Fla. 2009).

Here, Plaintiff contends that she engaged in statutorily protected activity when she objected to Defendants' failure to pay her wages at the agreed-to rate in breach of her employment contract. (Dkt. 1 at ¶¶ 139–48) However, her conversation with her supervisor points to no legislatively enacted law, rule, or regulation that was violated, and the Court has already determined that the conversation does not contain an objection to conduct that violates the FLSA. (Dkt. 1-1 at 11–14) As such, the Court finds that Plaintiff has failed to plead that she engaged in statutorily protected activity and cannot state a claim for retaliation under the FWA. Count Two for Unlawful Termination/Retaliation in Violation of Florida Private Whistleblower Act (PWA) Fla. Stat. § 448.102 is due to be **DISMISSED**.

### C. Breach of Contract

Plaintiff's second Count Two[3] asserts a claim for breach of contract. (Dkt. 1 at ¶¶ 149–59) To establish a breach of contract claim under Florida law, a plaintiff must allege: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009). Under Florida law, "a claim for unpaid wages frequently takes the form of a breach of contract claim." Eldredge v. EDCare Mgmt., Inc., No. 12–

---

[3] Plaintiff's Complaint mistakenly has two counts labeled "Second Cause of Action." (Dkt. 1 at 47–52)

61984, 2013 WL 6169217, at *5 (S.D. Fla. Nov. 22, 2013) (citing James W. Gardner Corp. v. Twomey, 496 So. 2d 946, 946 (Fla. 2d DCA 1986) (discussing "unpaid compensation under an employment contract"); Coffie v. Dist. Bd. of Trustees, Miami–Dade Cmty. Coll., 739 So. 2d 148, 149 (Fla. 3d DCA 1999) (discussing a claim for unpaid wages as a "breach of contract claim")). See also Alfonso v. Care First Med. Ctr. Inc., No. 14–22717–CIV, 2015 WL 1000983, at *3 (S.D. Fla. Mar. 5, 2015).

Here, Plaintiff alleges that she entered into an employment contract with Defendants entitling her to $35,000 per year in exchange for working as a certified veterinary technician. (Dkt. 1 at ¶¶ 150–51) Plaintiff alleges that this contract "complied fully with the applicable laws of the State of Florida and was fully enforceable," and that she "performed all contractual obligations and worked as directed by the Defendant." (Id. at ¶ 152) Plaintiff further alleges that Defendants breached this agreement when they failed to pay her at the promised wage of $35,000 per year and subsequently assigned Plaintiff a different job title to avoid paying her at the contracted rate. (Id. at ¶ 53) Construing the allegations in favor of Plaintiff as the Court must on a Motion to Dismiss, the Court concludes that Plaintiff's allegations are sufficient to meet the elements of a claim for breach of contract under Florida law for Defendants' failure to pay wages at the contracted rate. As such, Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's Second Count Two for Breach of Contract.

However, Plaintiff asserts that Defendants caused her "economic harm, psychological harm, physical harm, and property loss," and contends that but for the

breach she "would not have been subjected to the embarrassment and humiliation of being removed from her residence of several years" when she was forced into homelessness. (Id. at ¶ 156) As a remedy, she seeks an award of compensatory, special, and consequential damages for all losses incurred as a result of the breach. (Id. at ¶¶ 157–59) "Under Florida law, a contract plaintiff may recover damages in an amount which will place him in the position that he would have obtained but for the breach or the damages that are the natural and proximate result of the default, subject to the rules of foreseeability and certainty." Burger King Corp. v. Mason, 710 F.2d 1480, 1494 (11th Cir.1983) (citations omitted). Should Plaintiff prevail on her breach of contract claim for unpaid wages, she will be entitled to damages that are the difference between her agreed rate of pay under the employment contract for the time that she worked and the amount she was paid.[4]

Plaintiff will not, however, be entitled to recover the full offered salary of $35,000, nor can she recover any consequential or special damages resulting from Defendants' termination of the contract. This is because Plaintiff's employment was terminable at will. Under Florida law, "[i]t is well established that, where there is no provision for the duration of employment, the employment contract is terminable at the will of either party" and a party to such a contract "ordinarily has no cause of

---

[4] By the Court's calculation, this would be approximately $1,814.16. ($35,000/52 weeks = $673.08 per week x 3 weeks of work = $2,019.24, less $205.08). Liquidated damages, which are available under the FLSA, are not available under state law for breach of contract. Glanzrock v. Patriot Roofing Indus., Inc., No. 8:07-CV-535-T-33MAP, 2009 WL 179634, at *2 (M.D. Fla. Jan. 26, 2009).

action for the other party's decision to terminate the employment relationship." Crawford v. David Shapiro & Co., P.A., 490 So. 2d 993, 996 (Fla. 3d DCA 1986). See also Smith v. Piezo Tech. & Pro. Adm'rs, 427 So. 2d 182, 184 (Fla. 1983) ("[W]here the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of the employment contract."); Maguire v. Am. Fam. Life Assur. Co. of Columbus, Ga., 442 So. 2d 321, 323 (Fla. 3d DCA 1983). Plaintiff does not allege that her employment contract was for a definite duration, and the indeed.com job offer that she contends formed the basis of her contract does not include any such duration. (Dkt. 1-1 at 2–4) See Crawford v. David Shapiro & Co., P.A., 490 So. 2d 993, 996 (Fla. 3d DCA 1986) ("The mere fact that the rate of pay was expressed in terms of an annual salary does not mean . . . that the duration of employment is to be construed to be one year."). Thus, Plaintiff does not state a claim for breach of the employment contract based on her termination. Consequently, she is not entitled to any damages for this claim other than the difference between her contracted-for wages and the actual wages paid for the time period that she worked. See Knudsen v. Green, 116 Fla. 47, 53 (Fla. 1934) (holding that special damages are not available for termination of at-will employee).

Nor is Plaintiff entitled to punitive damages based on her allegation that Defendants' breach was "made with malice" and "accompanied by conduct so negligent as to constitute an independent tort." (Dkt. 1 at ¶ 159) See Henry Morrison Flagler Museum v. Lee, 268 So. 2d 434, 437 (Fla. 4th DCA 1972) ("[T]he mental

anguish suffered as a result of the breach of the employment contract does not amount to a cause of action in tort; nor does the eviction of the plaintiff from his residence, however embarrassing it may have been, amount to an independent tort upon which punitive damages can be predicated."); DeMarco v. Publix Super Markets, Inc., 360 So. 2d 134, 136 (Fla. 3d DCA 1978), aff'd, 384 So. 2d 1253 (Fla. 1980). The allegations in the Complaint do not set forth the elements of a willful independent tort sufficient to give rise to punitive damages.

### D. Wage Theft

Plaintiff also asserts a claim for "Wage Theft" pursuant to Pinellas County Code of Ordinances 70-306. (Dkt. 1 at ¶¶ 170–74) Section 70-306 of the Pinellas County Code of Ordinances makes unlawful an employer's "fail[ure] to pay any portion of wages due to an employee." Ord. No. 15-44, § 70-306. However, the Ordinance provides a detailed, County-run administrative process for obtaining relief, and does not create a private right of action for enforcement in a state or federal court. Ord. No. 15-44, § 70-307. See Green v. Stericycle, Inc., Case No. 16-24206-CIV (S.D. Fla. Dec. 15, 2016) (dismissing wage theft claim brought pursuant to Miami-Date County Code of Ordinances because "[a]ll of the Ordinance's summarized provisions reflect a careful and detailed invitation for aggrieved Miami-Dade County employees to seek redress for 'wage theft' through the County's administrative process, including County-handling of complaints, conciliation, and referral to Hearing Examiners; with rights of review and enforcement of subpoenas in a court of law"). Thus, to the extent

Plaintiff wishes to assert a claim under this section, she must comply with the procedures set forth in the Pinellas County Code of Ordinances.

Moreover, even if this were the proper forum for Plaintiff's wage theft claim, Section 70-308 of the Ordinance expressly prohibits the simultaneous enforcement of unpaid wage claims or damages for retaliation brought under federal or state law stemming from the same or substantially same facts and allegations:

> If during the pendency of a wage theft and/or retaliation violation complaint process but prior to the issuance of a final order by a special magistrate, an employee brings a private action in their own right, whether under state law, federal law, or both, in any state or federal court to seek unpaid wages or damages for retaliation based upon the same or substantially the same facts and allegations as the employee's complaint to the [Pinellas County Office of Human Rights], or affirmatively or by consent participates in any such litigation, that employee's complaint of wage theft and/or retaliation shall be dismissed with prejudice with respect to any employer named as a defendant in such court action.

Ord. No. 15-44, § 70-308(f)(1)(a). As Plaintiff will be pursuing wage claims in this action pursuant to the FLSA stemming from the same allegations as her wage theft claim, the Court finds that this claim is due to be **DISMISSED**.

### E. Fraud Counts

Plaintiff brings two counts of "Fraudulent Misrepresentation" and one count of "Promissory Fraud." (Dkt. 1 at ¶¶ 175–203) "The elements of fraudulent misrepresentation and fraudulent inducement are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Moriber v. Dreiling, 194 So. 3d

369, 373 (Fla. 3d DCA 2016) (citing <u>Butler v. Yusem</u>, 44 So. 3d 102, 105 (Fla. 2010); <u>GEICO Gen. Ins. Co. v. Hoy</u>, 136 So. 3d 647, 651 (Fla. 2d DCA 2013)). Fundamental contractual principles bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations. <u>Freeman v. Sharpe Res. Corp.</u>, No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing <u>Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.</u>, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J. concurring)). These separate facts may include misrepresentations or omissions which caused the plaintiff to enter into the contract. <u>Id.</u> (citing <u>Ladner v. AmSouth Bank</u>, 32 So. 3d 99, 105 (Fla. 2d DCA 2009)). However, a plaintiff will not succeed merely by labeling a breach of contract claim "fraud in the inducement." <u>Id.</u> "In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." <u>Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.</u>, No. 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014).

In the first count of Fraudulent Misrepresentation, Plaintiff alleges that she was induced to enter into an employment relationship with Defendants based on "material misrepresentations" made in the indeed.com job offer as to the position title and salary. Plaintiff's first claim of fraud is not factually independent from her contract claim. The alleged fraudulent representation—the offer of a Certified Veterinary Technician position salaried at $35,000 per year—provides the same basis for her

17

breach of contract claim. As such, the Court that Plaintiff's first claim for Fraudulent Misrepresentation is due to be **DISMISSED**.

Like her first claim for Fraudulent Misrepresentation, Plaintiff's claim for "Promissory Fraud" also stems from Defendants' allegedly false representations regarding salary and job title made in the indeed.com job offer. (Dkt. 1 at ¶¶ 195–203) Defendants assert that there is no discrete tort in Florida known as "promissory fraud." (Dkt. 19 at 19) It does not appear that the Florida Supreme Court has recognized this discrete cause of action separate from a claim for fraudulent inducement. Thus, this count is also due to be **DISMISSED**.

Plaintiff's second count of Fraudulent Misrepresentation stems from alleged representations and omissions on Defendants' website, which were made "to induce the public into conducting business with Petland stores." (Dkt. 1 at ¶ 183) Plaintiff states that the alleged representations on Defendants' website concern "the origins, health, and quality of the puppies sold in Defendant's stores." (Id.) Plaintiff states she visited Defendants' website prior to accepting the job offer and describes the representations on the website as follows:

1. "No one is more sensitive than we are to our puppies' health and care."
2. They do not purchase their dogs from puppy mills.
3. Petland does not sell sick dogs.
4. "Pet store puppies receive more veterinary care and oversight during the first 12 weeks of age than other puppies, and therefore have fewer health issues than puppies from most other sources."
5. "We share in the concern of communities and have a common objective to put puppy mills out of business."

6. "Maintaining such high standards comes with additional costs, but at Petland we simply do not cut corners when it comes to the health and well-being of our puppies."[5]

(Id. at ¶ 83) Plaintiff also alleges that Defendants have committed "fraud by omission by failing to state the true origins of [their] puppies to the public." (Id. at ¶ 188) Plaintiff alleges that Defendants in fact support "puppy mills" and mistreat their animals. (Id.) Plaintiff alleges that she relied on the "misrepresentations" made on Defendants' website in making her decision to accept employment with Defendants and that she would not have applied for or accepted the position at Defendants' store but for the misrepresentations made on the website. (Id. at ¶¶ 189–91) She alleges that her professional reputation has been damaged by her association with Defendants, which has caused prospective employers not to hire her. (Id. at ¶¶ 117–18) She also seeks damages for emotional distress caused "by her association with an organization that exploits animals and inflicts suffering upon them as a matter of routine business practice." (Id. at ¶ 194)

Defendants seek to dismiss this count for lack of standing, correctly noting that Plaintiff does not have Article III standing to sue on behalf of Defendants' customers for any alleged injuries to them. (Dkt. 19 at 18–19) However, Defendants overlook

---

[5] The Court notes that many of these statements appear to be puffery, which is not actionable on a claim for fraudulent misrepresentation. "A claim of fraudulent misrepresentation is not actionable if premised on a mere opinion, rather than a material fact." MDVIP, Inc. v. Beber, 222 So. 3d 555, 561 (Fla. 4th DCA 2017) (quoting Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168, 172 (Fla. 4th DCA 1994)). "It is the responsibility of the buyer of a product or service to investigate the truth of any 'puffing' statements, as such declarations 'do not constitute fraudulent misrepresentations.'" Id. (quoting Wasser v. Sasoni, 652 So.2d 411, 412 (Fla. 3d DCA 1995)). However, at least some of the alleged statements contain allegations of fact that could serve as grounds for Plaintiff's fraud claim, including that Defendants do not purchase their dogs from puppy mills and do not sell sick dogs.

that Plaintiff has also alleged an injury to herself in the form of her reliance on the alleged representations and omissions on Defendants' website in accepting employment with Defendants, which is sufficient to confer Article III standing for this count.

Nevertheless, this count is due to be dismissed on the merits because Plaintiff has not adequately alleged that Defendants' misrepresentations caused her claimed injury and associated damages. See Casey v. Welch, 50 So. 2d 124, 125 (Fla. 1951) (holding that a plaintiff must be injured by the defendant's misrepresentations to bring a fraud claim). She has not plausibly alleged that any prospective employer denied her employment because of Defendants' alleged association with puppy mills. In fact, Plaintiff alleges a litany of reasons for why prospective employers may have denied her applications for employment, including her homelessness, lack of working telephone and access to a computer, lack of appropriate clothing, and lack of proper identification, none of which are related to Defendants' alleged association with puppy mills. Plaintiff's allegation that her inability to obtain employment was due to her association with Defendants is purely conclusory and speculative and is thus insufficient to state a claim.

Nor can Plaintiff premise this claim on the emotional distress she allegedly suffered as a result of Defendants' misrepresentations and omissions. Florida follows "the impact rule," which provides that a plaintiff cannot recover damages for emotional distress where the emotional distress does not flow from some physical injury. 4658 N. Ocean Inc. v. Branch Bank & Tr. Co., No. 10-61865-CIV, 2011 WL

13216975, at *6 n.5 (S.D. Fla. Feb. 15, 2011) (citing R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 362–63 (Fla. 1995)). "While there is an exception to the impact rule for recognized intentional torts that result in predominantly emotional distress (namely, defamation, intentional infliction of emotional distress, and invasion of privacy), the torts of fraud and fraudulent inducement have not been included among those excepted from the rule under Florida law." Id. (internal citation omitted) Thus, Plaintiff's alleged emotional distress cannot satisfy the damage element of her second count of Fraudulent Misrepresentation. As such, this count is due to be **DISMISSED**.

### F. Tortious Interference with Contract and Civil Conspiracy Claims

Plaintiff also asserts causes of action for tortious interference and civil conspiracy premised on allegations that Defendants conspired with and paid her attorney to breach his fiduciary and contractual duties to her and "deprive Plaintiff of access to the courts." (Dkt. 1 at ¶¶ 204–18, 233–43)

To state a claim for tortious interference with a contract, "a plaintiff must establish (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the breach of the contract; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." Washington v. Sch. Bd. of Hillsborough Cty., 731 F. Supp. 2d 1309, 1320 (M.D. Fla. 2010) (citing Johnson Enters., of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1321 (11th Cir. 1998)). Lawful competitive practices are privileged under Florida tortious interference law. Wackenhut Corp. v. Maimone, 389 So. 2d 656, 658 (Fla. 4th DCA 1980). As long as no improper means are employed, business activities

21

taken to safeguard or promote one's own financial interests are not actionable. Ethyl Corp. v. Balter, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980); accord Perez v. Rivero, 534 So. 2d 914, 916 (Fla. 3d DCA 1988).

Plaintiff's civil conspiracy count is premised on a violation of 42 U.S.C. 1985(3). (Dkt. 1 at ¶ 241) Section 1985(3) prohibits certain conspiracies to violate constitutional rights. Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002). "The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Id. (quoting Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1146–47 (11th Cir. 1996). "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law, and, as such, a claim under § 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private encroachment." Id.

Both counts rest on Plaintiff's allegation, "upon information and belief," that the relationship between Defendants and her attorney at some point became "pecuniary in nature," causing Attorney Celler to breach his fiduciary and contractual duties to Plaintiff and ultimately terminate their contractual relationship. (Dkt. 1 at ¶ 213) "Conclusory allegations made upon information and belief are not entitled to a

presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A., No. 18-81251-CIV, 2019 WL 7837887, at *3 (S.D. Fla. July 3, 2019) (quoting Scott v. Experian Info. Sols., Inc., 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018)). In addition to her conclusory allegation that the relationship between Attorney Celler and Defendants at some point became pecuniary, Plaintiff alleges that Attorney Celler "failed to follow through with all of his assertions" that he would file a complaint on her behalf and that he committed malpractice because her case file contained only six email messages exchanged with Defense counsel in the two weeks prior to his withdrawal. (Dkt. 1 at ¶¶ 207–10) She also contends that Attorney Celler "was implicated" in false accusations made by Defendants against Plaintiff suggesting that she altered a wage agreement. Plaintiff's allegations pertaining to her attorney's alleged malpractice in representing her do not suffice to plausibly state a claim against Defendants for tortious interference or a conspiracy to violate constitutional rights under 42 U.S.C. § 1985(3) and do not plausibly support her contention that the relationship between Defendants and her attorney was pecuniary. Plaintiff provides no support for the allegation that Defendants paid her attorney to breach his contractual and fiduciary duties to her or to stall her case in an effort to deprive her of her rights to the Court. Without any plausible factual basis to support these allegations, the Court finds that these claims are due to be **DISMISSED**.

### G. Abuse of Process and Defamation

Plaintiff also pleads causes of action for abuse of process and defamation stemming from a lawsuit Defendants filed against her in Miami-Dade County. (Dkt. 1 at ¶¶ 219–32) In support of these counts, Plaintiff alleges that Defendants brought the action "to threaten and harass her rather than to seek justice" and that the complaint "contained false statements and disparaging comments against the Plaintiff." (Id. at ¶ 221)

A cause of action for abuse of process contains three elements: (1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage. S & I Invs. v. Payless Flea Mkt., Inc., 36 So. 3d 909, 917 (Fla. 4th DCA 2010). However, "[t]he mere filing of a complaint and having process served is not enough to show abuse of process." Id. (quoting Della-Donna v. Nova Univ., Inc., 512 So. 2d 1051, 1055 (Fla. 4th DCA 1987). "Where the process was used to accomplish the result for which it was intended, '*regardless of an incidental or concurrent motive of spite or ulterior purpose,*' there is no abuse of process." Id. (quoting Biondo v. Powers, 805 So.2d 67, 69 (Fla 4th DCA 2002)). Plaintiff's allegations that Defendants initiated the complaint against her for a malicious purpose do not state a claim for abuse of process. Accordingly, this claim is due to be **DISMISSED**.

Plaintiff's defamation claim is also due to be dismissed, as it is barred by the litigation privilege. Florida courts apply a "litigation privilege," which "affords absolute immunity for acts occurring during the course of judicial

24

proceedings." <u>Jackson v. BellSouth Telecommunications</u>, 372 F.3d 1250, 1274 (11th Cir. 2004). The privilege is an affirmative defense, but "the Florida courts have . . . made it abundantly clear that any affirmative defense, including the litigation privilege, may be considered in resolving a motion to dismiss when 'the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action.'" <u>Id.</u> at 1277 (quoting <u>Reisman v. Gen. Motors Corp.</u>, 845 F.2d 289, 291 (11th Cir. 1988) (other internal quotations omitted)). "The privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been extended to cover all acts related to and occurring within judicial proceedings." <u>Id.</u> at 1274. As set forth by the Florida Supreme Court,

> absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding.

<u>Levin, Middlebrooks v. U.S. Fire Ins. Co.</u>, 639 So. 2d 606, 608 (Fla. 1994). Plaintiff's defamation allegations all stem from statements made by Defendants in the Miami-Dade complaint, and thus are squarely barred by the litigation privilege. Accordingly, this claim is due to be **DISMISSED**.

### H. Intentional Infliction of Emotional Distress

Plaintiff's final cause of action is for intentional infliction of emotional distress. (Dkt. 1 at ¶¶ 244–49) "A claim of intentional infliction of emotional distress under Florida law requires a plaintiff to prove: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior and he knew or should have known that

emotional distress would likely result; (2) the conduct was outrageous, that is, it went beyond all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Malverty v. Equifax Info. Servs., 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (citing LeGrande v. Emmanuel, 889 So. 2d 991, 994 (Fla. 3d DCA 2004)). Whether a defendant's conduct is outrageous is to be evaluated objectively and is a question of law for the court to decide. Id. (citing Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). "[C]ourts uphold claims of intentional infliction of emotional distress only in 'extremely rare circumstances.'" Casado v. Miami-Dade Cty., 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018) (quoting Triana v. Diaz, 12-21309-CIV, 2014 WL 5319800, at *7 (S.D. Fla. Oct. 16, 2014)).

Plaintiff alleges "extreme and outrageous conduct" by Defendants from the initiation of the employment relationship to the date of the Complaint. (Dkt. 1 at ¶¶ 244–45) Though she does not specify any particular conduct in this count, it appears that Plaintiff would have the Court refer to all of the factual allegations in the Complaint that form the basis of her other asserted causes of action. Considering the allegations in the Complaint as a whole and in the light most favorable to Plaintiff—absent those which are wholly unsupported in fact—the Court finds that the conduct complained of falls short of the conduct found to be sufficiently outrageous in cases permitting intentional infliction of emotional distress claims. See, e.g., Nims v. Harrison, 768 So. 2d 1198 (Fla. 1st DCA 2000) (allegations of threats to kill the

26

plaintiff and rape her and all of her children sufficient to state a claim for intentional infliction of emotional distress); Thomas v. Hosp. Bd. of Dir. of Lee Cty., 41 So. 3d 246, 256 (Fla. 2d DCA 2010) (allegations that hospital made false statements about decedent's cause of death which led to the interruption of decedent's funeral and a second autopsy sufficient to state a claim for intentional infliction of emotional distress). Accordingly, this claim is due to be **DISMISSED**.

## I. Shotgun Pleading

In the Motion to Dismiss, Defendants argue that Plaintiff's Complaint constitutes an impermissible shotgun pleading because it groups Defendants together and does not specify which Defendant committed which acts and because each count incorporates all prior allegations. (Dkt. 19 at 3–8) A shotgun pleading is "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . ." Lampkin-Asam v. Volusia County Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008)[6]; see also Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests"). "Pleadings of this nature are prohibited by Rule 8(a)(2), which requires a claim for relief to be 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Lampkin-Asam, 261 F. App'x at 277 (quoting Fed.

---

[6] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority.  See 11th Cir. R. 36-2."  United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

R. Civ. P. 8(a)(2)). "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

Plaintiff's Complaint lists two Defendants, Pooches of Largo, Inc. and Luis Marquez, asserts that both were her employer for purposes of the FLSA and the state law counts, and asserts that Marquez "is the owner of Pooches of Largo and maintains full control over the actions of the corporate entity." (Dkt. 1 at ¶ 16) Construing Plaintiff's Complaint liberally, the Defendants are sufficiently alleged to be jointly and severally liable such that the Court finds that Plaintiff need not specify which particular Defendant was responsible for the specific acts alleged. Furthermore, although each count incorporates all of the previous paragraphs, each count also provides additional facts specific to the given claim. The counts were sufficiently pleaded to permit Defendants to address each count individually in their Motion to Dismiss as well as to allow the Court to determine whether each count adequately stated a claim for relief. Therefore, Defendants' Motion to Dismiss Plaintiff's Complaint as an impermissible shotgun pleading is **DENIED.**

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss and/or Strike the Complaint as a Sham, Shotgun Pleading, (Dkt. 19), is **GRANTED IN PART and DENIED IN PART** as stated herein.

   a. Plaintiff's FLSA wage claim and Plaintiff's claim for breach of contract survive dismissal. The remaining claims are **DISMISSED**.

2. Defendants are directed to answer the Complaint within **fourteen (14) days** of the date of this Order.

3. Because this case will proceed only on Plaintiff's claims for unpaid wages, the Parties are relieved of the requirement to file a Case Management Report as prescribed in the Court's Related Case Order and Track Two Notice. (Dkt. 4) **The Court is issuing an FLSA Scheduling Order *sua sponte* by separate notice.**

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of July 2021.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any pro se party