UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MELANIE NICOLE MOORE,**

    Plaintiff,

v.                                          Case No: 8:20-cv-2184-MSS-SPF

**POOCHES OF LARGO, INC. and
LUIS MARQUEZ,**

    Defendants.

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion for Final Summary Judgment, (Dkt. 66), Plaintiff's response in opposition thereto, (Dkt. 67), and Defendants' reply in support. (Dkt. 69) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS IN PART and DENIES IN PART** the Motion for Summary Judgment.

**I.   BACKGROUND**

Defendant moves for summary judgment on the remaining claims in this action: Plaintiff's Fair Labor Standards Act ("FLSA") and Florida Minimum Wage Act ("FMWA") claims for unpaid wages (Counts I and II), and Plaintiff's cause of action for fraudulent misrepresentation premised on alleged false statements that Plaintiff claims Defendants made in a job posting online. (Count V). (Dkt. 66) The remaining counts have been dismissed. (Dkt. 60) At the outset, the Court would note that the

Parties have failed to file a stipulation of stipulation of agreed material facts as required by the Court in its Case Management and Scheduling Order. (Dkt. 61 at § II.G.1) The limited undisputed facts the Court can discern are as follows.[1]

Plaintiff was hired by Defendant Pooches of Largo ("Pooches") in August of 2018 after applying for a full-time Veterinary Technician job paying $35,000 annually through Indeed.com. Specifically, Plaintiff worked for Pooches for a three-week period beginning August 13, 2018 through August 31, 2018, when she was terminated after complaining that she was being underpaid as an hourly employee at $8.45 per hour. Defendants concede that Plaintiff was onboarded, perhaps mistakenly, as a "Kennel Technician" and paid at an hourly rate of $8.45, and Defendants cannot explain the discrepancy. (Dkt. 66-1 at ℙ 4) The remaining salient facts are disputed for purposes of summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no

---

1 Courts are "under no independent obligation to rummage through the . . . exhibits submitted . . . in search of some excerpt that might bolster [a party's] point." Shaw v. City of Selma, 241 F. Supp. 3d 1253, 1280 (S.D. Ala. 2017), aff'd, 884 F.3d 1093 (11th Cir. 2018) (citing Rule Fed. R. Civ. P. 56(c)(3) (noting that on summary judgment, "[t]he court need consider only the cited materials").

genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements, denials, or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III.   DISCUSSION

Defendants contend that summary judgment is appropriate on all three claims.

1.  **FLSA Claim**

First, Defendants contend that summary judgment is appropriate on Plaintiff's FLSA claim because (1) there is no evidence that Defendant failed to pay minimum wages and (2) there is no evidence of a willful violation of the FLSA, rendering Plaintiff's FLSA claim time barred. (Dkt. 66 at 6 – 7)

Defendants' argument that there is no evidence of a failure to pay minimum wages is based on their contention that Plaintiff was paid $8.45 per hour for all hours worked, when the minimum wage in Florida was $8.25. (Dkt. 66 at 7) However, the number of hours that Plaintiff worked during the three-week period in which she was employed by Pooches is disputed in this record; thus, there remains a genuine dispute of material fact concerning whether Plaintiff was in fact paid below minimum wage.

Plaintiff has alleged that she worked full-time during the three-week period of employment, or approximately 100 hours. (Dkt. 43 at ¶ 18) Defendants submit the affidavit of Defendant Luis Marquez, one of the owners of Pooches, in support of their position concerning Plaintiff's hours. (Dkt. 66-1) Marquez attests that Plaintiff worked 24.27 hours her first week, and 44.07 hours in weeks two and three. (Id. at ¶ 6) Thus, Marquez avers that "[a]ccording to company records, [Plaintiff] worked a total of 64.34[2] hours during the entire three-week window in August 2018." (Id. at ¶ 7)

The businesses records relied on by Marquez to support this statement in his affidavit are two of Plaintiff's Earnings Statements. (Dkt. 66-1 at 6–7) The first states

---

2 The Court notes that 24.27 and 44.07 adds up to 68.34 hours, not 64.34 hours.

4

that it is for the period starting on Friday, August 17, 2018 through the period ending Thursday, August 30, 2018, with the pay date being Friday, August 31, 2018. (Id. at 6) This Earnings Statement reflects that Plaintiff worked a total of 24.27 hours during this pay period. (Id.) However, this Earnings Statement does not support Marquez's averment that Plaintiff worked 24.27 hours during her first week of work—Monday August 13 through Sunday August 19—as the pay period does not cover the full first week. (Id.)

The second Earnings Statement relied on by Marquez fares even worse in supporting his affidavit. This document states that Plaintiff worked a total of 44.07 hours for the period starting August 31, 2018 through the period ending September 13, 2018. (Id. at 7) Curiously, this pay period does not cover the second two weeks of Plaintiff's work for Pooches—all but one day in that pay period constitutes time *after* Plaintiff's termination on August 31, 2018. (Id.) Plaintiff clearly could not have worked all 44.07 hours on her final day of employment. Thus, the Court finds that Marquez's affidavit and documentary evidence, rather than resolve the disputed question of the number of hours worked by Plaintiff, create a factual dispute concerning the accurate number of hours worked by Plaintiff.

Moreover, Plaintiff has submitted her own documentary evidence of the number of hours she worked, at least for the final two weeks of her employment, which evidence contradicts Marquez's affidavit. Plaintiff has produced and filed evidence of her work schedules for the second and third weeks of her employment with Pooches.

(Dkt. 45 at 8–9) Defendants do not contest the validity of these schedules.[3] These schedules reflect that Plaintiff worked 61 hours for the final two weeks of employment—from Monday August 21, 2018 through Friday August 31, 2018, when she was terminated. (Id.)

It is the employer's duty to keep records of an employee's wages, hours, and other conditions and practices of employment, as the employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed. Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1315 (11th Cir. 2007). In situations in which the employer's records cannot be trusted and the employee lacks documentation, an employee has carried out her burden if she offers proof that she has in fact performed work for which she was improperly compensated and if she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. Id. at 1316. The burden then becomes the employer's to bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. Id.

Here, given the discrepancies in Defendants' scarce records and the contradictions in Marquez's affidavit, the Court finds that Plaintiff's work schedules

---

3 In her Requests for Production, Plaintiff requested "Any and all work schedules for which the Plaintiff was scheduled to work for the period of August 13, 2018, through September 15, 2018." (Dkt. 67-2 at 3) In response, Defendants state that "All responsive documents have already been produced to Plaintiff and she has filed them." (Id.) As such, the validity of the schedules is, at this point, undisputed in this record.

are sufficient to create a reasonable inference supporting her contention that she worked more hours than she was paid. Assuming, as alleged, that she worked the same schedule her first week as she did the second two weeks, Plaintiff worked approximately 99 hours prior to her termination by her own record evidence. Taking the evidence in the light most favorable to Plaintiff, she was paid approximately $5.83 an hour during her three weeks of employment at Pooches—well under Florida's $8.25 minimum wage.

Under 29 U.S.C. § 255(a), any action for unpaid minimum wages or liquidated damages under the FLSA "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . ." A willful FLSA violation occurs when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Whether a defendant acted willfully in violating the FLSA is typically a question for the jury. See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1162 (11th Cir. 2008). In their response to interrogatories, Defendants concede that they conducted no detailed investigation into Plaintiff's wage complaint, and "confirmed Plaintiff's pay based on her work schedule and pay rate." (Dkt. 67-3 at 3) If this is accurate, then Defendants would have been aware that Plaintiff was not being compensated for all hours for which she was scheduled to work, as discussed above. Thus, a reasonable

7

jury could find that Defendants knew that their failure to compensate Plaintiff for all hours scheduled was in violation of the FLSA, or alternatively, that Defendants demonstrated reckless disregard concerning whether their conduct violated the statute. Moreover, given that there are material issues of disputed fact as to whether Defendants violated the FLSA, it would be inappropriate for the Court to determine the question the issue of willfulness on a motion for summary judgment. See Watkins v. City of Montgomery, 919 F. Supp. 2d 1254, 1265 (M.D. Ala. 2013) ("[T]he fact-specific inquiry as to whether [an FLSA] violation was willful is generally best left to the jury."); McGuire v. Hillsborough Cnty., FL, 511 F. Supp. 2d 1211, 1218 (M.D. Fla. 2007) ("[W]hether a defendant committed a willful violation is a jury question.").

As such, Defendants' Motion for Summary Judgment is due to be **DENIED** as to Count I.

### 2. FMWA Claim

Next, Defendants contend that summary judgment is due to be granted in their favor as to Count II, Plaintiff's FMWA claim, because Plaintiff did not serve the required pre-suit notice. (Dkt. 66 at 7 – 8)

> [P]rior to bringing any claim for unpaid minimum wages pursuant to [§ 448.10], the person aggrieved shall notify the employer alleged to have violated this section, in writing of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of the alleged unpaid wages through the date of the notice.

Fla. Stat. § 448.110(6)(a). After receiving the notice, the employer has 15 calendar days to resolve the matter before the aggrieved employee may file suit. Fla. Stat. § 448.110(6)(b). Plaintiff contends that the FMWA notice provision is unconstitutional.

A minority of federal courts have held the notice requirement of the FMWA to be unconstitutional because it adds a requirement restricting a right to a minimum wage previously granted by the Florida Constitution, Article X, Section 24. See Throw v. Republic Enterprise Systems, Inc., 2006 WL 1823783 (M.D. Fla. Jun. 30, 2006) (finding notice unnecessary to bring a claim under Section 24, Article X of the Florida constitution); Bates v. Smuggler's Enters., Inc., No. 2:10-cv-136, 2010 WL 3293347, at *1-4 (M.D. Fla. Aug. 19, 2010) ("The cause of action created by the Florida Constitution does not contain the notice requirements of the Florida statute, and such requirements . . . impermissibly modify the [constitutional] right in such a fashion that it alters and frustrates the intent of the framers and the people to provide a cause of action without the detailed pre-suit notice.").

The majority of district courts, however, that have examined the issue have concluded that "section 448.110(6)(a)'s pre-suit notice requirement is constitutional and applies to both claims under the FMWA and Article X, Section 24, of the Florida Constitution." Smith v. Heritage Health Care Ctr., 2017 WL 10841212, at *4 (N.D. Fla. Aug. 2, 2017); see also Martinez v. DDS Delivery Servs., LLC, No. 6:21-CV-794-GAP-EJK, 2022 WL 203231, at *2–3 (M.D. Fla. Jan. 24, 2022) (collecting cases); Villarino v. Pacesetter Pers. Serv., Inc., 481 F. Supp. 3d 1252, 1257 (S.D. Fla. 2020); Garcia-Celestino v. Ruiz Harvesting, Inc., 2013 WL 3816730, at *16–17 (M.D. Fla.

July 22, 2013) ("Allowing a cause of action to proceed under the Amendment without meeting the notice requirement renders Section 448.110(10) and the FMWA meaningless.").

Some courts have also declined to exercise supplemental jurisdiction over the FMWA claim, reasoning that the issue is best left for state courts. See, e.g., Oster v. Lucky Rest. Mgmt., LLC, No. 8:16-cv-2352, 2016 WL 6893972, at *2-5 (M.D. Fla. Nov. 23, 2016).

The Court concurs with the majority of courts that have found the pre-suit notice provision to be a constitutional requirement. See Fla. Const. art. X, § 24(f). "The FMWA's pre-suit notice requirement neither curtails a plaintiff's ability to vindicate his or her constitutional rights, nor restricts those rights to certain groups." Martinez, 2022 WL 203231, at *3 (citing Fla. Hosp. Waterman, Inc. v. Buster, 984 So. 2d 478, 492-93 (Fla. 2008); Sparkman v. State ex rel. Scott, 58 So. 2d 431, 432 (Fla. 1952)). "Instead, it supplies a reasonable procedural framework for vindicating one's constitutional rights—a framework that provides employers and employees with a method to quickly resolve disputes without resorting to the filing of a lawsuit and without sacrificing judicial economy." Id. (internal quotation marks and citations omitted). The Court must "construe a statute in such a way as to render it constitutional if there is any reasonable basis for doing so." Id. As such, the Court finds that the pre-suit notice provision is not unconstitutional, and Plaintiff cannot circumvent it by bringing suit under the Florida Constitution.

Moreover, Defendant is correct that the record evidence does not support that Plaintiff properly complied with the pre-suit notice provisions of the FMWA, which requires that the notice "must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of the alleged unpaid wages through the date of the notice." Fla. Stat. § 448.110(6)(a). The notice sent by Plaintiff's former counsel to Defendants did not meet these requirements, and Plaintiff does not point to any other pre-suit communication that does. (Dkt. 45 at 15–16) As such, Defendants' Motion for Summary Judgment is due to be **GRANTED** as to Count II.

  3. Fraud Claim

Defendants contend that summary judgment is due to be granted on Count V, Plaintiff's claim of fraud. (Dkt. 66 at 8–10) The elements of claim for fraudulent misrepresentation are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010). Generally, to be grounds for fraud, a false statement must be of a past or existing fact, not a promise to do something in the future. Wadlington v. Cont'l Med. Services, Inc., 907 So. 2d 631, 632 (Fla. 4th DCA 2005). The exception to this rule is "where the promise to perform a material matter in the future is made without any intention of performing or made with the positive intention not to perform." Id. (quoting Vance v.

Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367, 1371 (Fla. 4th DCA 1981)).

Defendants acknowledge that Plaintiff's rate of pay was $35,000 annually but state that "somehow her payroll was accidentally entered as[,] and she was compensated at[,] $8.45 an hour." (Dkt. 66 at 8) Defendants contend that the job posting on Indeed.com cannot be actionable as fraud because it was not a job offer and was merely an invitation to apply for the veterinary technician position. (Id. at 9) However, Plaintiff is not alleging that the job posting itself was an offer of employment and is not pursuing a claim for breach of contract based on the job posting. Thus, Defendants' arguments that the posting itself does not create any contractual or quasi-contractual rights is irrelevant to resolution of this claim on summary judgment.

Defendants next contend that the job offer cannot constitute evidence of fraud because there is no evidence that Defendants promised Plaintiff the veterinary technician position paying $35,000 annually with fraudulent intent not to perform. (Id. at 10) Rather, Defendants contend that the evidence merely supports that Plaintiff's onboarding at a position with an hourly wage of $8.45 an hour was merely a "bookkeeping or administrative error." (Id.)

In response, Plaintiff argues that Defendants' conduct after her termination provides circumstantial evidence of their fraudulent intent, namely that they attempted to use "deception, threats, and intimidation" to conceal their fraudulent conduct. (Dkt. 67 at 9–10) Specifically, Plaintiff has produced evidence that in pre-suit communications, Defendants denied that she had been hired for the full-time

12

veterinary technician position salaried at $35,000 annually, falsified her hours, and accused her of altering a wage agreement for a "kennel technician" position. (Dkt. 44 at 17–18) Plaintiff also contends that Defendants baselessly sued her for defamation as another way to intimidate her into dropping her claims against them. (Dkt. 67 at 9–10)

The Court would note that in all prior pleadings before this Court and in their responses to Plaintiff's interrogatories, Defendants have vehemently denied that Plaintiff's allegation that she was hired for a full-time position salaried at $35,000. (See e.g., Dkt. 62 at ¶ 14 (denying in their Answer the allegation that Plaintiff was employed from August 13 through August 31, 2018, that she applied by submitting an application on Indeed.com, and that she was offered a position for a full-time certified veterinary technician compensated at $35,000 annually); Dkt. 67-3 at 1 (contending that "Plaintiff's job title was 'kennel technician'" and her hourly wage was $8.45" in their responses to interrogatories)) For the very first time in this Motion, Defendants acknowledge that Plaintiff *was* correct about her anticipated salary, but Defendants now claim that their failure to pay her that salary was merely a mistake. (Dkt. 66 at 8) Defendants' persistent failure to acknowledge what they now admit was an error could be seen by a jury as circumstantial evidence of fraudulent intent. Additionally, the undisputed evidence that Defendants terminated Plaintiff immediately after she raised the salary issue with her supervisor could be viewed by a reasonable jury to support Plaintiff's assertion of fraudulent intent. "Fraudulent intent usually must be proved by circumstantial evidence and such circumstances may, by their number and joint

13

consideration, be sufficient to constitute proof." Cohen v. Kravit Est. Buyers, Inc., 843 So. 2d 989, 991 (Fla. 4th DCA 2003).

Moreover, "[a]s a general rule, it is a matter for the jury to determine if an intentional misrepresentation has been made." Wadlington, 907 So. 2d at 633 (quoting D & M Jupiter, Inc. v. Friedopfer, 853 So.2d 485 (Fla. 4th DCA 2003)); see also Cohen, 843 So. 2d at 991 ("In fraud cases, summary judgment is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge.").

As such, the Court finds that Plaintiff has presented sufficient circumstantial evidence to create a jury question concerning whether Defendants' promise to pay a $35,000 annual salary was made without any intention of performing, so as to support Plaintiff's claim of fraud. Therefore, the Court finds that summary judgment is due to be **DENIED** as to Count V.

### 4. Dismissal of Marquez

Finally, Defendants contend that Defendant Marquez should be dismissed "because he has no personal knowledge or involvement in anything concerning Mrs. Moore." (Dkt. 66 at 10–11) Again, Defendants rely solely on Marquez's affidavit, which as discussed *supra*, contains inconsistencies and creates a factual dispute for purposes of summary judgment. Moreover, as pointed out by Plaintiff, in Defendants' responses to her interrogatories, they concede that Plaintiff's supervisor, Allison Nieves, "did not terminate the Plaintiff; she conveyed to the Plaintiff that she was terminated." (Dkt. 67-3 at 2) Defendants do not disclose who made the decision to

14

terminate Plaintiff, but they admit that Marquez is the owner and President of Petland Largo, and that he "operates Petland Largo under the business name *Pooches of Largo, Inc.*," which is where Plaintiff was employed. (Dkt. 62 at 11) Defendants also admit that, though no detailed investigation was taken after Plaintiff complained about her wage discrepancy, "Defendants confirmed Plaintiff's pay based on her work schedule and pay rate." (Id. at 3) By use of the plural, this response would appear to apply to *both* Defendants. As such, the Court finds that Marquez's statement that he had no interaction or involvement with Plaintiff's employment or the representations made on the Indeed.com job posting could be found to lack credibility by a reasonable jury. At the very least, it is a disputed issue of fact. As such, the Court is not persuaded that dismissal of Marquez is appropriate at this juncture.

### IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion for Final Summary Judgment, (Dkt. 66), is **GRANTED IN PART and DENIED IN PART**. Summary judgment is **GRANTED** in favor of Defendants on Count II. The Motion is **DENIED** in all other respects. This matter will proceed to trial.

**DONE** and **ORDERED** in Tampa, Florida, this 24th day of July 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person