UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
No.: 8:20-CV-2184-MSS-SPF

**MELANIE MOORE**

    Plaintiff,

v.

**POOCHES OF LARGO, INC. d/b/a PETLAND & LUIS MARQUEZ,**

    Defendants.

_____/

### DEFENDANTS' OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

### INTERROGATORIES

**INTERROGATORY NO. 1:** Please state Plaintiff's job title, position, dates, and hours of employment, agreed wage, and duties, and provide any and all documents or records used to support these facts.

**ANSWER:** Plaintiff's job title was "kennel technician." Plaintiff held the position from August 13, 2018 to August 31, 2018. Plaintiff's hourly wage was $8.45. Plaintiff already has the schedule and paystubs for Plaintiff's employment with Defendants.

**INTERROGATORY NO. 2:** Please describe with particularity the events of August 31, 2018, leading up to and including Plaintiff's termination and state the grounds for termination.

**ANSWER:** The Defendants' entire knowledge of the events of August 31, 2018 leading up to Plaintiff's termination is what is contained in the text message

exchange between Plaintiff and Allison Nieves. Plaintiff was terminated for making baseless, unprofessional accusations against Defendants.

**INTERROGATORY NO. 3:** Please describe Petland Largo's disciplinary protocol and provide any employee handbooks or other documentation related to company policies, rules, and/or disciplinary procedures.

**ANSWER:** All relevant information is contained in Petland Largo's employee handbook, which will be produced.

**INTERROGATORY NO. 4:** Please describe how the duties of kennel technician and certified veterinary technician at Petland differ and state the average wage and manner of compensation for both positions at Largo Petland in 2018.

**ANSWER:** Please see the job descriptions, which will be produced.

**INTERROGATORY NO. 5:** Please explain the scope of Allison Nieves's authority to make decisions regarding the termination of an employee and whether she is required to consult with any other person or persons prior to terminating an employee.

**ANSWER:** Ms. Nieves did not terminate the Plaintiff; she conveyed to the Plaintiff that she was terminated.

**INTERROGATORY NO. 6:** Please describe in detail what steps were taken to investigate Plaintiff's complaint about the wage discrepancy, by whom and when the investigation was made, results of investigation, and provide each and every document or record, in any form, consulted in the course of investigation or otherwise used to determine whether the Plaintiff was owed wages.

**ANSWER:** Defendants did not conduct a detailed investigation because it was unnecessary. Defendants confirmed Plaintiff's pay based on her work schedule and pay rate.

**INTERROGATORY NO. 7:** You allege that the Plaintiff was a part-time employee, however, your weekly work schedules show that the Plaintiff was scheduled a minimum of 37 hours per week. Please explain how many hours per week are considered part-time and full-time at Petland.

**ANSWER:** Defendants allege that Plaintiff was an hourly employee paid $8.45 per hour; there is no meaningful difference for Ms. Moore with respect to full-time versus part-time. A full-time employee generally works 37.5 to 40 hours per week, or more. A part-time employee generally works less hours.

**INTERROGATORY NO. 8:** Including compensation information is optional when creating an employment offer on Indeed.com. Please explain Your rationale for including compensation information in Your employment offer(s) on the platform.

**ANSWER:** Defendants have never put any employment offers on Indeed.com.

**INTERROGATORY NO. 9:** Please explain the means by which You received the wage agreement You alleged to have in Your possession from Richard Celler as stated in Your response to Mr. Celler's demand letter.

**ANSWER:** Richard Celler sent Defendants the wage agreement as an attachment to his demand letter. Plaintiff knows this because she attached the transmittal letter and the attached wage agreement to her complaint.

**INTERROGATORY NO. 10:** Please provide the annual revenue for Petland Largo in 2018.

**ANSWER:** Defendants object to this request as irrelevant and calculated to embarrass, harass, or annoy Defendants. The annual revenue for Defendants' Largo location in 2018 is not probative of any claims or material facts in dispute between the parties in this litigation.

**INTERROGATORY NO. 11:** You allege that the Plaintiff called Petland a "puppy mill" in their defamation action. Please produce any and all documentation showing that the Plaintiff made this statement and describe with specificity when and where the statement was made, and explain how You determined that the statement was made by the Plaintiff.

**ANSWER:** Plaintiff maintained a Facebook page in which she made false and defamatory allegations. Plaintiff's postings on the page, including an image of the cease-and-desist letter from Defendants' counsel to Plaintiff alongside a statement from the page owner acknowledging personal receipt of the letter, made it clear that Plaintiff operated the page.

**INTERROGATORY NO. 12:** Please state what information Facebook allegedly You allege to have received from Facebook to support Your contention that Plaintiff administrated the Facebook page at issue in the defamation action. Identify and include each and every communication, in any form, between Facebook and You and/or Your counsel concerning the Plaintiff or the page at issue or its contents and provide court order authorizing the disclosure of information from Facebook and any other related documents.

**ANSWER:** There were no communications between Defendants and Facebook. Otherwise, see the answer to interrogatory 11.

**INTERROGATORY NO. 13:** Please describe how the Facebook page at issue in the defamation action is defamatory and state the specific facts that are false and/or defamatory and explain how they are false and/or defamatory and state the grounds for Your belief that Plaintiff is responsible for posting the alleged defamatory content.

**ANSWER:** Plaintiff made false and defamatory statements about Defendants on the page, accusing Defendants of abusing dogs in a manner comparable to cultural practices of raising dogs in abusive conditions for slaughter. These false statements are of a kind that would result in harm to Defendants' reputation and standing in the eyes of others.

**INTERROGATORY NO. 14:** Please identify who was directed to effectuate service of the defamation complaint and describe in detail the steps taken to serve the Plaintiff and produce any and all documentation showing the summons was returned unserved.

**ANSWER:** Defendants do not recall who was directed to serve Plaintiff and do not possess a copy of the affidavit of non-service. Plaintiff already has the email showing a request for waiver to Plaintiff from Defendants' counsel that Plaintiff made public by filing.

Respectfully submitted,

_/s/ Matthew Sarelson
Florida Bar 888281
**DHILLON LAW GROUP, INC.**
Attorneys for Defendant
1601 Forum Place, Suite 403
West Palm Beach, Florida 33401
305.773.1952
msarelson@dhillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, I served the filed version of this document on all counsel of record via the Court's e-portal system.

/s/ Matthew Sarelson
Matthew Sarelson